May it please the court, counsel. I'm Brett Foster and pleased to represent Unitek in this appeal. The court should reverse the district court's preliminary injunction decision and correct errors that infected every aspect of its decision. We have a unique posture here and one I haven't seen in a quarter of a century of practice where the court stayed the entire district court proceedings and in the stay order said that this court might provide guidance. Though disappointed with the order of preliminary injunction, we're grateful to have this opportunity and hope that this court will provide the guidance and correct the errors. Unitek is a company that saw its future years ago converting used motor oil into a diesel fuel product that would be EPA approved as something that could be used on the road, sold in gas pumps throughout the country. After much deliberation in 2005, they selected a mark that with thought and imagination would convey the economical and the environmental friendly nature of the product. They were not assisted by counsel but filed and received a registration with the Patent and Trademark Office, 11 million dollars in sales over eight at the time of the hearing, now nine years, and continuous proprietary adjustments bring them right to the cusp of being ready to fulfill their business plan dreams. And on that cusp of fulfillment, Chrysler comes with knowledge of the trademark and with the specific pronouncement from the United States Patent and Trademark Office that their use would create a likelihood of confusion, chooses to appropriate the mark. Can we focus on the district court went wrong? Well, let me just tell you, the district court finds against you on a bunch of grounds. Finds that your mark is merely descriptive, not suggestive, it hasn't obtained a secondary meaning. District court finds that there's no likelihood of confusion. So how do you get, those are factual findings, are they unsupported by the record? I would respectfully disagree that the findings that you're talking about are purely factual. There are pure legal errors in every aspect of the court's decision. The likelihood of confusion analysis, the court did not apply in any aspect of the opinion, the reverse confusion theory that we promoted and that we proved, we believe, at the hearing. Could we start with the merely The test that is set out, the mental leap test, is a very vague, manipulable test and the district court said you don't have to take that sort of mental leap here, it's very straightforward and it's hard for me to see why that would be an abuse of the district court's discretion. So help me understand why that, how we could say it's illogical, implausible, without support in the record. Well I think to step back before we get to the specific application of the imagination test, I think it was it was clear error in the way the court applied it, but there are legal errors that led to that and the first legal error is the violation of the anti-dissection rule where the court simply took the echo portion of the mark and said it's environmentally friendly and then looked at the diesel part and said that's generic and then said combining the two there's not even a mental hop. Well it combined the two, so we said you can't separate them out, but it did look at them combined, it specifically says combining the two, it's straightforward. One word of analysis or one phrase, combining the two, that's it. Then the next. That's what we got, that's what we got, the district court made that finding. Okay. So why that's not, you might disagree, but it's hard for me to see why that was a legal error since it expressly looked at them together. Because the court did not perform any analysis and did the same thing that self-realization fellowship church, the district court did there, where the district court said self-realization is descriptive, fellowship and church are generic, therefore combining them yields an unprotectable mark. It's exactly the sentence after the court said combining the terms, what does the district court do, went right to echo. Let's assume the court was wrong on that for a second. I'm having trouble with that conclusion, but let's assume it was. Don't you have to show that there was a secondary meaning? Well, you can show secondary meaning and we believe that we did. But didn't the judge find that you didn't? That's correct. It was your burden to convince the judge that there was a secondary meaning. And though we appeal a lot of issues, that's not one that we appeal. We believe that this mark was inherently distinctive and frankly coming to the next legal error, we think, is failure to follow the Lahode decision where this court has said we lack expertise in this specific area of determining a hard question sometimes. What's the line between distinctive and inherently and undisputed that there are approximately 70 principal registrations of echo portions of the mark and for the echo diesel portion of the mark, Volkswagen had it on the principal register from 1992 to 1998 until they discontinued. So there's a couple of indications that the Patent and Trademark Office, at least at certain points, there's suggestions that it thought echo diesel might be suggestive. So there was the Gordon situation, which you cite, where they backed off. But then that never went forward. He dropped it for other reasons. And then with VW, I guess, what happened with that? They abandoned that mark? That's correct. And my understanding is that was because they stopped selling echo diesel vehicles. The vehicle they now sell has a clean diesel engine. Okay. Then on the other side, the opposing counsel argues, well, that Unitech registered there's a supplemental register, which the Trademark Office takes the position that that's an admission that it's not suggestive. Well, we respectfully disagree with that analysis and what we have. That's what that's not the analysis. That's what the Trademark Office says, right? That their statement, their position is that's that's an admission. Yes. When it happens in the normal way, the normal trademark prosecution, there's a rejection on merely descriptiveness. Didn't happen here. The other side can't register it on the principal register. They offer supplemental registration, they accept, and then it becomes capable of being distinctive. So there's sort of evidence, though, from the Trademark Office perspective going both ways. There's some evidence that they thought it might be suggestive. There's some evidence that they're saying, well, it's an admission that it was merely, or they told Unitech to go on to the secondary register. So there's some evidence going the other way. Yeah. I respectfully submit that the evidence on Ecodiesel is from the Patent Office. It was on the principal register for Volkswagen. Jeff Gordon had a merely descriptive registration, presented evidence of 70-some-odd principal registrations of ECO, and ECO hyphen formative marks were ECO flush. Let me ask you about that, because the other ECO marks that you point to would not seem different. So like ECO boost could be a caffeine drink, it could be a jumper, it could be anything. Whereas Ecodiesel, the diesel part couldn't be anything. It seems like it would relate to diesel, which is what it did in this case. Well, I think there are some examples where the second part of the ECO fuel, an ECO fuel Roman numeral 2, for an environmentally fuel, sounds a lot like Ecodiesel, and that's twice on the principal register, indicating, as Lahode, their expertise has said when you have a generic, or potentially generic, combination with ECO, it's too broad. One point I want to make, too, is in the DreamWorks case, looking at whether or not something was suggested, the court's language was DreamWorks and the DreamPortionPlus works were vague notions of fantasy and hope, and it's a big leap to get to the specific product. What you have here, by virtue of 70 principal registrations of ECO formative marks, is a vague notion. You can't cover and say this is descriptive, merely to have that body of evidence before you. We're here on an appeal from a denial of a preliminary injunction, and the district judge said, look, we have products here that are not the same. You're producing fuel, the other side's producing an engine. There's no real likelihood that you're going to be in competition with each other, the district court says, and therefore, there's no real substantial likelihood of confusion. What's wrong with that finding? Well, the problem with that... On a preliminary injunction, put aside the issue of whether or not you've got a distinctive mark, et cetera. The question is whether somebody ought to be enjoined at this point. What's wrong with that finding? Well, what's wrong with that finding is the product to be produced is fuel that will be sold at the pumps. The court's failure to analyze it as a reverse confusion case with a strong possibility of expanding the product would make it so that you have a hand-in-glove fit. A diesel engine does not work without diesel fuel. But did you produce any evidence at trial that your clients were likely, during the time period covered by our preliminary injunction, which is pendente laite, to be producing an engine? No. In fact, never an engine. But the trademark laws are clear that the products do not have to be competitive in order to have an injunction. The issue in the public policy behind the Lanham Act is, whether it's on the register or to common law marks, is confusion, likelihood of confusion. And what the district judge said was, look, these are two very different products. You're not competing with each other. I don't see a likelihood of confusion. And so tell me why the district judge was wrong in finding that. Well, a good roadmap for it is the Patent and Trademark Office's rejection of where it said, these are complementary goods, which the Lanham Act covers. And they will be used by the same, they may be used, was the language the PTO used, by the same customers. Therefore, you have the hand-in-glove fit. They may not be competitive, but the cases are legion that talk about something that isn't directly competitive in regard to a product. And was there evidence, as Judge Hurwitz said, that during the time frame of the preliminary injunction, this fuel would be going into the market? According to the briefs at that point, there were two customers, and there was not a gear up to the production of any significant quantities. That's a, the issue is, what are the customers and potential customers? Did they have the, was there evidence that they would produce it by the time this case is over? I would say, yes. Mr. Yamagata's testimony in his declaration and in his live testimony said, when they get EPA approval, they will be taking the steps to do this immediately. And I think the answer is, absolutely. I think that also, in respect to the customers, we cannot forget, and the case law makes it clear, that you can establish, through licensees of your technology, your rights. And their game plan from day one has been to license their proprietary PDX system throughout the country. And they've been going to the NORA Convention, the National Oil Recyclers Association, throughout the country, and to hundreds of people throughout the country. Those are potential customers. Those are covered by the Lanham Act, and that breadth isn't just in Hawaii. Their sales of the commercial product have been local, have been principally to Grace Pacific, and there have been some other content. And that was for use as asphalt, if I understood that. An asphalt plant, that is correct. But the beauty of the trademark laws is it protects even a small company that doesn't have a lot of resources. The Sands-Taylor case that we cite in our reply brief is the one case I'm aware of where you've got market expansion, the product did not yet exist. All they had was a test product, just like we have here. Testing that proved that we meet EPA regulations, and we're ready to go forward with on-highway production. There was no evidence there that you would have commercial production ready to go today. And if you, the problem with, are they going to be producing it between now and when the trial happens during the preliminary injunction, you have this tsunami wave of the, we have the financial data on the advertising of Chrysler. That's going to blow away and destroy the goodwill that Unitech has. I want to make, I wanted to reserve some time for rebuttal, but quickly in regard to inherent distinctiveness, one thing that's critical for this court is Unitech argues it's inherently distinctive. Chrysler said with no sales, with no advertising campaign, a few months after they had merely announced it, that there was an immediate association with their customers at EcoDiesel, and that immediate association was so significant that they would lose substantial brand momentum, i.e. an irreparable harm argument. What's that? That's an inherently distinctive mark by their own admission. My time is up. Well, your time is up, but we will give you a chance to respond. Thank you. May it please the Court, Judith Powell on behalf of Appali Chrysler Group, I will address first the lack of distinctiveness of the Pallance mark, and then market expansion and reverse confusion. The district court correctly concluded that EcoDiesel is descriptive for diesel fuel. This court can affirm on that basis alone. As Judge Ikuda pointed out, the district court did in fact combine Eco and Diesel and conclude that the combination was, was, required no mental leap. There was no legal error on this. On the issue of descriptiveness, Unitech's true argument is that there was a factual error on the part of the district court that supports the district court's conclusion, and so long as the district court's view of the evidence is plausible in light of the record in its entirety, there can be no clear error. So what about the VW registration of EcoDiesel on the principal register? Isn't that evidence that the Patent and Trademark Office thought it was suggestive? Lahode instructs that a third-party registration of a similar mark is not determinative of distinctiveness if circumstances have materially changed since the time of that registration. Did the judge find that circumstances had materially changed? The judge did not make a specific finding in that regard, but that was not necessary. Circumstances have materially changed because Eco in 1990, when VW registered EcoDiesel, was a novel concept. Not so in the last ten years when it's become part of common parlance meaning ecological. Continuing on the distinctiveness issue, to determine distinctiveness, as stated in Zabmondo, the court must consider the meaning prevalent among prospective customers. The evidence supports descriptiveness in this regard. Chrysler introduced more than 15 dictionary references showing diesel meant a kind of engine and fuel for that engine. And Chrysler introduced more than 15 dictionary references showing Eco meant ecological. How do we review that evidence? Do we review it de novo or do we get... I mean, the judge is quite able, but we can read dictionaries as well as he. What's the consequence of dictionary definitions being introduced? Dictionary definitions are factual evidence. It is a part of the factual record. And are we supposed to trust the judge's credibility finding as to the dictionary? I mean, I come back to Judge Hurwitz's question. I mean, I understand why we apply clear error to a district judge's finding of fact when witness A says this and witness B says something else. But when we have something as sort of black and white written down in a book as a dictionary definition, I don't know why I have to defer to the district judge on that point. Your Honor, it is simply another piece of factual evidence. And as Surges Center instructs, dictionary references are evidence of consumer perception. No, I got that. But I'm on the question of how much deference do we owe to the district judge on the question as to whether or not a mark is in itself descriptive or in itself suggestive? I mean, and if the only evidence in front of the district judge is the dictionary, I can't. I, along with Judge Hurwitz and I suspect Judge Ankuda, we can all read the dictionary. It is not the only evidence that was in front of the district court, Your Honor. Also in front of the district court was the evidence that the major fuel industry participants, those in a position to understand what consumer perception was, all believed the term eco-diesel was descriptive for diesel fuel, as shown in their oppositions to the Jeff Gordon application to register eco-diesel for fuel. They stated in their oppositions it was descriptive at best. Are those oppositions evidentiary? Those oppositions would be factually evidentiary. Yes, Your Honor. How were they admissible? How would they be admissible? I'm sorry, Your Honor? How were those declarations, oppositions in the patent office, I take it? They were in the patent trademark office and they were introduced in the district court. They were introduced. Yes, Your Honor. And taken into evidence. Yes, Your Honor. I'm trying to figure out under what theory of evidence third-party declarations about something come in, but I guess nobody thought about it, so move on. Thank you, Your Honor. So that was evidence of customer perception as Zatmando instructs that we must consider. Third, the Grace Pacific testified that eco-diesel meant to it a type of green fuel. That was Unitech's only customer testifying. Then the fact that Unitech did register on the supplemental register and disclaimed its term during the trademark application process shows that it was descriptive. Even Unitech's cases show that supplemental registration is an admission as to descriptiveness, just not binding on the court. But it's evidence. And the examiner's position to Unitech that it should register on the supplemental register is evidence of descriptiveness because under trademark office rules, a suggestive mark cannot be registered on the supplemental register. So it's evidence but not preclusive? Not preclusive. In other words, we don't have a government finding that this is merely descriptive. What we have is some evidence from the government that can be introduced to show it. That's correct. There is no evidence that Unitech can point to that outweighs the evidence or that this court should consider as weighing it differently that shows clear error. The other eco-registrations that were referenced in the Jeff Gordon application file, there's no evidence as to the basis on which they registered. They are simply listed in his office action response. There's no evidence as to how they were actually used in the marketplace. Therefore, no evidence as to consumer perception of what they meant. But most importantly, those registrations were different marks or as to different goods, and every mark must be the distinctiveness of every mark must be considered with respect to the goods with which it is used. Let me go at the case this way. The selling point for the eco-diesel fuel, I gather, is not merely that there's diesel fuel. You can get diesel fuel lots of different places. The selling point is that it is ecologically sound given the method by which it is produced. And the method by which it is produced is unusual. It's recycling of motor oil, turning it into usable diesel fuel. Well, eco-diesel doesn't tell me the method by which it is produced or the argument that one might make as to why using it as opposed to some other diesel fuel would be particularly ecologically desirable. Given then that what we really have, if it's fleshed out, is a marketing strategy designed to appeal to people who are environmentalists and like the idea of eco-diesel, given the nature of the product and why they think it should be appealing, is barely descriptive. Could you respond to that? Your Honor, that is precisely the argument that this Court rejected in the Zatomando case. When false media argued in that case that the would-you-rather mark did not specifically convey that the choices were bizarre or ridiculous, this Court rejected that argument stating, quote, the imagination test is not what could be derived from a mark, but rather if a mental leap is required. No mental leap is required to show that eco-diesel as a composite is ecologically conscious diesel fuel. Well, no, but you're not quite taking my point. It's ecologically conscious in a very particular way, not just that it's ecologically sound. Many people argue that diesel fuel in itself is ecologically sound because you tend to get higher gas mileage out of a diesel engine. But this is ecologically sound for a very particular reason. And the particularity need not be shown in order for a mark to be descriptive. A mark is descriptive if it conveys something about the general nature of the goods or general characteristic of the goods. No mental leap is required here. The district court's view of the evidence is plausible on distinctiveness and there was no clear error. Under your view of the law, could General Motors develop an engine called eco-diesel? Chrysler has started using its mark in the marketplace. It has established meaning for its mark in the marketplace. General Motors would be directly competing. Chrysler would have priority. It would be likely to be confused. I'm sorry. So your view is that your mark has developed secondary meaning? Your Honor, at this point in time, there is no evidence as to its development of secondary meaning. But if General Motors were to come in with a directly competing product using the exact same mark, there would certainly be a different issue before the court. I'm just trying to figure out, is your mark distinctive? In our application, we disclaimed the term eco-diesel, meaning that we admitted that the term is descriptive. Merely descriptive. Therefore, it must develop secondary meaning in order to be able to prevent others from using the mark as likely to confuse them. And of course, there's no evidence. I'm just trying to understand your position. Your position is that your mark would not be protectable until it's acquired secondary meaning. Correct, Your Honor. And of course, Unitech is not arguing the secondary meaning issue at this point. That is correct. They did not appeal that issue. I'd like to turn quickly to the market expansion and reverse confusion factors that the court did not clearly air in its analysis of market expansion. The issue is not whether Unitech has a strong possibility of expanding to a product that may be considered related to Chrysler Scars. It is, as Your Honor pointed out, they must show a strong possibility that they would compete with Chrysler. And there was no such showing, as instructed by Sleekcraft. Unitech's argument that the expansion need not be shown to be into competition is totally inconsistent with all of the case law. In every case in which market expansion supported infringement, the future goods would directly compete. And that includes the Sands-Taylor case that my opposing counsel cited. The products there were going to be Thirst Aid for an isotonic beverage versus Gatorade for an isotonic beverage. In every reverse confusion case, the court examines the party's current goods and the relatedness of the current goods, and whether the consumer is likely to This court needs to go no further on expansion. But the district court did consider the possibility that Unitech would get into this new product, a new market it had never served, and be able to market at retail, which it had never done before. And the court found it had not made a sufficiently strong showing. On this factual issue, the district court did not clearly err. Finally, the district court did consider reverse confusion. It considered and rejected both reverse confusion, stating, The reasonably prudent consumer is not likely to be confused as to goods bearing either Unitech's or Chrysler's mark. The reference to consumers viewing Unitech's mark is to consumers of Unitech's product. That is only relevant on reverse confusion. It is not a determination made on forward confusion. The court considered and rejected reverse confusion. Could you address for a moment your opponent's contention that the district court, in effect, deconstructed the mark into two components and only cursorily considered it as a single phrase? It is absolutely appropriate for a court to consider component parts. And as Judge Ikuda pointed out, the district court considered the component parts, then combined them, stated expressly it was combining them, and determined that the whole was no different than the sum of its parts. The district court was not required to go into an extensive, lengthy analysis in that regard. Numerous cases, including the Telmed case, including Surge Center case, there's no further discussion than what this court did. But on reverse confusion, what Unitech would have this court do is misapply the law. It would have this court take one likelihood of confusion factor, the market expansion factor, elevate that factor above all the others, consider it first and before any of the others, determine that Unitech has a strong possibility of expanding into a market where it has never been, with a product it has never produced, and then and only then apply the likelihood of confusion factors. But that is not the law. The law examines the party's present goods, the party's current markets, and the party's current customers, Unitech's current customers. Manufacturers entering into long-term contracts for fuel for their production plants, take their time in their purchase, are not likely to be confused. Under the reverse confusion factors this court found pivotal in DreamWorks, there can be no reverse confusion. The district court did not err. Unitech's mark is weak because it is descriptive, therefore entitled to little protection. Even though the parties use the same mark, Chrysler's mark is distinguished by the use of its famous house brands, Cheap and Ram, and those must be taken into context. The way in which the mark is seen in the marketplace has to be considered as instructed by Cone versus Petsmart, as instructed by Trevon versus Pfizer. And Chrysler's use of its house brand distinguishes its mark. Lastly, the party's goods are wholly unrelated. Industrial fuel and cars sold to consumers. Industrial fuel sold to manufacturing plants, cars sold to consumers do not converge, do not meet in the marketplace. There is no likelihood of confusion. There is no basis for reverse confusion. This court should affirm in its entirety. Okay? Thank you. Let's put two minutes on the clock. Thank you very much, Your Honor. In regard to competitive products, the question asked earlier, Westchester Media says specifically, competition between the parties' products is not required in order to find a likelihood of confusion. The danger of affiliation or sponsorship confusion increases when the junior users market and the seniors expand to touch each other. So that affiliation or sponsorship is another error where the court did not, apart from reverse or forward, didn't look at that, looked only at source confusion for someone trying to buy a $40,000 automobile at the dealership, which isn't our case. Our case is at the gas pump. Another case that I wanted to mention, counsel stated that it is current products. What is happening? Well, the Sands-Taylor case was a product not on the market. It's the only case I'm aware of where the strong possibility standard, which this court did not even get right, strong probability or likelihood is not remotely close to strong possibility. That's pure legal error. Words matter. Here is the one case where you've got reverse confusion and you've got currently on the market issues. In regard to competition, does the rule only apply in competition? DreamWorks mentioned it, although it's not the holding. It mentioned the right and concern of the trademark holder to expand into areas that obviously wouldn't be producing Hollywood films. They're Star Trek convention people. The Zabmondo case. The Zabmondo case says that in the proper setting, the Patent and Trademark Office's decision can be enough. In this decision case, where EcoDiesel has been approved by the Patent Office, Eco itself some 70 times, and Chrysler's own admission of inherent distinctiveness, there are rights in the mark. Limited rights are still rights. The district court found none. We ask the court to reverse. Thank you. Roberts. Thank you very much. Thank both sides for your arguments.
judges: FLETCHER, IKUTA, HURWITZ